DILLETT *vs.* KEMBLE and others.

1. Equity will not relieve a person from the effects of a mistake which is the result of his culpable negligence.

2. Knowledge that a judgment was outstanding upon lands upon which the owner, supposing them to be free from encumbrance, was erecting a building in the sight of the person having such knowledge, and silence on his part while the building was thus being erected, will not estop him from enforcing execution upon that judgment in which he purchased an interest after the building was sufficiently advanced to secure the amount due thereon. Silence would not operate as an estoppel until he obtained an interest in the judgment.

On final hearing on pleadings and proofs.

*Mr. F. Voorhees* and *Mr. P. L. Voorhees*, for complainant.

*Mr. Ewan Merritt*, for defendants.

THE CHANCELLOR.

One of the two points made in this cause, and which were argued very elaborately before me, was passed upon by the late Chancellor, as appears by his opinion in *Dillett* v. *Kemble*, 8 *C. E. Green* 58. He there held that the complainant had no title to relief on the ground of mistake. I fully concur in that opinion. The complainant's mistake was the result of culpable negligence. He took the title to land he had purchased, paid the consideration money, and built upon the property, before he discovered that it was subject to the lien of the judgment, the payment of which the defendants were seeking to enforce against it when the bill was filed. He had, indeed, caused a search to be made for encumbrances, but it did not extend to the records of the Supreme Court, where the judgment in question was recorded. His excuse for the omission is, that he did not know that there was such a court as the Supreme Court, in New Jersey. Ignorance of the general laws of one's own country, is presumed to be gross negligence. Every man in this state will be presumed to know of the existence of its judicial system, of the jurisdiction of its courts, and of the effect and operation of their judgments and decrees upon property. In this case the complainant was aware of the importance of investigating the title, but from want of full knowledge of the subject, and his omission to obtain the information he needed, he failed to learn of the existence of the encumbrance in question. Equity will not assist a man whose condition is attributable to his failure to exercise that diligence which may be fairly expected from a reasonable person. This rule has been applied where the negligence was that of counsel. Where a purchaser was evicted by reason of a defect of title which his counsel had overlooked, it was held

that he had no claim in equity to be repaid the purchase money.. See *Wakeman* v. *Duchess of Rutland*, 3 *Ves.* 233, 235.

The other point made, is that the holders of the judgment,. being aware of the fact that the complainant was building a. house on the land on which the judgment was a lien, inequi- tably stood by, keeping silence as to the lien or existence of the judgment, until the complainant had expended a large sum of money in the erection of the building, and then pro- ceeded by execution to enforce their lien upon the premises. The judgment appears to have been recovered by Allen and McLaren against John Scott, the complainant's grantor, Jan- uary 17th, 1868, for $576.03, and execution issued thereon the same day to the sheriff of Burlington, by whom it was returned with a levy on other premises than those conveyed to the complainant. The premises so levied on, appear to have been sold under a prior execution on a senior judgment against Scott, and nothing was realized from them on the Allen and McLaren judgment. Scott conveyed to the com- plainant the lot on which the latter has built his hotel, May 16th, 1871. It was then vacant, and was sold to the com- plainant for $50. Scott assured the complainant that it was free from encumbrance. The complainant began to build,. May 20th, 1871, and completed the house about the 18th of the following August. The defendant, Messmore, got an assignment of McLaren's interest on the 6th of July of that year. An alias *fieri facias de bonis et terris* was issued on the judgment, July 29th, 1871, and levied on the property in, question on the 7th of August. Messmore testifies that when. he first heard of the existence of the Allen and McLaren judg- ment, he thinks the cellar of the house was dug and the frame up. Dillett says the mason began to wall the cellar on the 24th of May, and it took him about eight or nine days to do. it, and that the carpenters commenced on the 6th of June. Messmore says that it was within two weeks after he first. learned of the existence of the judgment, that he purchased. McLaren's interest in it. The assignment is dated, and ap- pears to have been executed, on the 6th of July. According:

to his testimony, it was not a great while after the assignment was made, that he informed Allen, who lived and did business in the city of New York, that the building was being erected on the lot. He says it might have been within a week. From this statement, the truth of which I see no reason to doubt, the house had been so far constructed, when Messmore acquired his interest in the judgment, that the improvement had added to the value of the property more than the amount due on the judgment. It is admitted by Messmore, that he knew of the building from about the time when it was commenced, but he says he had no knowledge whatever of the existence of the Allen and McLaren judgment when the complainant began to build. If he had known of it, and if, to go farther, he had contemplated purchasing it, or an interest in it, with a view to getting payment out of the property as improved by the complainant, I cannot see how those facts can operate as an estoppel against him. His conduct may have been the dictate of malevolence. He may have been actuated by a desire for revenge for a real or fancied insult or injury, sustained at the hands of the complainant. But, conceding these things, he was clearly, up to the time he obtained an interest in the judgment, in no situation to be estopped by his silence.

He was, up to that time, certainly under no obligation to inform the complainant of the existence of the judgment. He was perfectly at liberty to buy the judgment, or an interest in it, and there could be no equity between him and the complainant up to the time when he purchased McLaren's interest. He appears to have purchased it for $50, and he seeks to compel payment of the judgment out of the complainant's property. I would be glad to be able to relieve the complainant in the premises, but I cannot do so consistently with the rules of law or equity.

The injunction will be dissolved and the bill dismissed, but without costs.