# PEELER vs. LEVY and wife.

1. Equity cannot compel a conveyance by a married woman of her separate property, under a contract therefor made by the husband, nor decree a conveyance by the husband of the lands of the wife, in pursuance of such contract.

2. The court has power to decree compensation for the lands of the wife which the husband cannot convey ; but its exercise is discretionary.

3. Compensation is to be awarded, when it appears from a view of all the circumstances of the case, it will subserve the ends of justice ; it will be denied, when, upon a like view, it appears it will produce hardship or injustice to either of the parties. No inflexible rule can be adopted.

4. Generally, it will be denied where the party asking it had notice at the time the contract was made, that the vendor was agreeing for more than he could give or convey, and it appears that the vendor has not, in consequence of the contract, placed himself in a situation from which he cannot extricate himself without loss.

5. Where the party seeking performance of a contract knew, at the time the contract was made, that the defendant did not have title to part of the land he agreed to convey, and where he shows no special ground entitling him to equitable relief; where he has not changed his situation in consequence of the contract so that he must suffer loss, if it is not specifically performed, and his claim to relief stands solely upon his right to the advantage he has obtained by the contract; and where nothing appears from which it can be fairly inferred, a suit at law will not afford him full and complete redress, a court of equity will, in the exercise of a sound discretion, deny compensation and leave the complainant to his ordinary legal remedy.

6. In a suit for specific performance, a husband will not be decreed to procure his wife to join in the execution of a deed for the purpose of releasing her inchoate right of dower, if she is unwilling to do so.

7. The husband may be decreed to convey and to give indemnity against the claim of the wife. But a decree of indemnity will only be made where it appears that the wife's refusal to convey is not her voluntary act, but made in bad faith, by the device of the husband, to escape his just obligation.

8. Where the party seeking performance had reason to believe that the defendant supposed and understood the contract was without binding force, and entirely optional with him, he is entitled to no relief.

Final hearing on bill, answer and proofs.

*Mr. F. K. Howell* and *Mr. Cortlandt Parker*, for complainant.

*Mr. John W. Taylor*, for defendants.

THE VICE-CHANCELLOR.

This is an action for specific performance, founded on a contract under seal, bearing date June 18th, 1874. By it the defendant agreed to exchange four tracts of land located in Montclair township, Essex county, for a farm of the complainant, containing about two hundred and thirty-six acres, situate in the township of Montgomery, Orange county, New York, subject to a mortgage of $26,000. The title to two of the four tracts was in the defendant's wife, at the date of the contract, and had been since September 8th, 1871. They were conveyed by the defendant to David A. Frome, and by him to the wife. She is made a defendant.

The prayer is that both defendants may be compelled to perform the contract specifically, or if that cannot be done, then that the husband may be compelled to perform, so far as he can, and to make compensation for so much of the land as he cannot convey.

The wife did not sign the contract; indeed, the proof is clear, she had no information the exchange was contemplated, until some days after the contract was made. Some weeks before negotiations were opened, she left her husband in consequence of his grossly intemperate habits, and went to her father's house in Troy, New York. There is no evidence of ratification or approval of the contract by her, but on the contrary, it is shown she warned her husband not to make it, as soon as she was informed negotiations were on foot.

Under this state of facts, it must be conceded it is not within the power of this court to compel a conveyance by the wife, nor to decree a conveyance by the husband of the lands of the wife. *Emery* v. *Wase*, 8 *Vesey* 513; *Welsh* v. *Bayaud,*

6 *C. E. Green* 187; *Nelthorpe* v. *Holgate,* 1 *Coll.* 216; 2 *Chitty's Con.* 1485, 1486, *note n,* (11 *Am. ed.*)

Even if she was a party to the contract by ratification, or had signed it herself, a decree for specific performance could not be made against her.    *Wooden* v. *Morris,* 2 *Green's Ch.* 65; *Pentz* v. *Simonson,* 2 *Beas.* 232; *Pierson* v. *Lum,* 10 *C. E. Green* 391.

The important question presented by this branch of the case is, shall the husband be decreed to make compensation for the lands of his wife which he cannot convey?    The court has power to give compensation, but, like the general power of decreeing or refusing specific compensation, it is discretionary.    *Gariss* v. *Gariss,* 1 *C. E. Green* 79; *Willard* v. *Tayloe,* 8 *Wall.* 567.    Compensation is to be awarded, when it appears, from a view of all the circumstances of the particular case, it will subserve the ends of justice; and it will be denied, when, upon a like view, it appears it will produce hardship or injustice to either of the parties.    No inflexible rule can be adopted applicable to all cases, but each case must be decided on its own special facts.    Generally, it will be denied where the party asking it had notice at the time the contract was made, that the vendor was agreeing for more than he could give or convey, and it appears the vendee has not, in consequence of the contract, placed himself in a situation from which he cannot extricate himself without loss. 2 *Chitty's Con.* (11 *Am. ed.*) 1490; *Fry on Spec. Perf.,* § 795, note 2; *Nelthorpe* v. *Holgate,* 1 *Coll.* 223; *Harnett* v. *Yeilding,* 2 *Sch. & Lef.* 559; *Wiswall* v. *McGowan,* 1 *Hoff. Ch.* 131; *Thomas* v. *Dering,* 1 *Keen* 747.    This rule has the support of the clearest dictates of justice.    It is unconscionable for one man to take the promise of another to do a particular thing, which the promisee knows, at the time the promise was made, the promissor cannot perform except by the consent or concurrence of a third person, and then, when consent or concurrence is refused by the third person in good faith, to demand a strict and literal fulfillment of the promise. He contracts with full notice of the uncertainty or hazard

attending the promissor's ability to perform, and has no right, therefore, to ask the extraordinary aid of a court of conscience in repairing the loss he has sustained by the non-fulfillment of the contract. He must be content with his ordinary legal remedy.

A court of equity will not take jurisdiction of a naked claim for damages, even when it is made under the guise of a suit for specific performance. *Morss* v. *Elmendorf*, 11 *Paige* 287 ; *Hatch* v. *Cobb*, 4 *Johns. Ch.* 559 ; *Kempshall* v. *Stone*, 5 *Johns. Ch.* 193.

The evidence as to whether or not the complainant had notice the title to the two tracts was in the defendant's wife, at the time the contract was made, is very conflicting. The complainant swears he did not know it, and did not learn it until after the defendant's refusal to perform. The defendant's brother, Bernard, swears he notified the complainant, during the negotiations, and assured him the defendant could not trade without his wife's consent. The defendant and Bernard both wanted the farm. The negotiations commenced with Bernard, and both brothers went with complainant to Orange county, on the day the contract was made, with a view of making a joint bargain for the farm, and then dividing it between them. It seems, according to the evidence of the complainant, they attempted to agree upon a division before making a contract for it, disagreed as to which should have the large dwelling-house, and became involved in a wrangle, when Bernard said to the defendant : " If you are going to take the big house, after my coming up here first, and having all this trouble looking at it, I won't have anything further to do with it." According to all the evidence, it is certain Bernard was greatly dissatisfied, and in just the mood to disclose any fact likely to arrest negotiation and prevent a contract being made. All the witnesses agree the defendant alluded to his wife during the negotiation. Harris, the real estate broker, who was ostensibly acting for the defendant, but who, it is quite manifest from his evidence, is now acting in concert with the complainant, says,

during the negotiation the defendant said he did not know whether his wife would " coincide " in the trade or not; that the complainant replied, if we do not trade to-day, we will not trade at all; and then the defendant said he would run the risk of his wife. The complainant does not state the occurrence quite so strong. He says the defendant said he would like his wife to see the farm, or *something of that kind*, and he (complainant) replied the trade must be made that day, or not at all. The complainant, however, says this, in reply to a question as to whether the defendant did not say to Harris he must reduce his commissions in case his wife did not assent to the trade, that the defendant did say, if the trade did not go through, or *something like that*, Harris must make a light charge for commissions. His evidence fully shows the complainant had notice of three facts, at least: first, the defendant desired to consult his wife, before completing the contract, finally; second, in consequence of not consulting her before making the contract, a risk was incurred; and, third, there was a possibility of his not being able to fulfill the contract. They were sufficient to excite inquiry. A prudent man, engaged in making a contract of so much importance as this, could not have avoided it. None appears to have been made. If Bernard Levy made the communication to the complainant he swears he did, none was necessary, and the conduct of the complainant, in this regard, was natural and rational.

The evidence convinces me the complainant knew, at the time this contract was made, the defendant did not have title to two of the tracts he agreed to convey. The establishment of this fact, in a case where the complainant shows no special ground entitling him to equitable relief, where he has not changed his situation in consequence of the contract, so that he must suffer loss if it is not specifically performed, and his claim for relief stands solely upon his right to the advantage he has obtained by the contract, and where nothing appears from which it can be fairly inferred, a suit at law will not afford him full and complete redress, makes it the duty of

the court, in the exercise of a sound discretion, to deny compensation, and leave the complainant to his ordinary legal remedy.

I think it is sufficiently shown the wife refused to join in the execution of a deed for the lands owned by the husband. The bill charges the defendant is able to make a good and sufficient title to the lands he agreed to convey. An answer under oath was required. The answer avers that the wife, of her own accord, and without the procurement of the husband, refuses to join. It is strictly responsive to the charge contained in the bill, and dispenses with proof of the fact.

The rule is beyond question in this state, that in an action for specific performance, a husband will not be decreed to procure his wife to join in the execution of a deed for the purpose of releasing her inchoate right of dower, if she is unwilling to do so. *Hulmes* v. *Thorpe*, 1 *Halst. Ch.* 423 ; *Young* v. *Paul*, 2 *Stockt.* 401 ; *Hawralty* v. *Warren*, 3 *C. E. Green* 128 ; *Welsh* v. *Bayaud*, 6 *C. E. Green* 187 ; *Reilly* v. *Smith*, 10 *C. E. Green* 158. A rule requiring him to do so, would overthrow a wise statutory safeguard designed to protect married women against coercive alienations. But if the refusal of the wife is made in bad faith, or by the procurement of the husband, merely to enable him to escape his just obligation, the court may decree a conveyance by the husband alone, and compel him to give indemnity by mortgage, or otherwise, against the claim of the wife. However, to warrant a decree of indemnity, it must appear the refusal is not the voluntary act of the wife, but the device of the husband. *Young* v. *Paul* and *Hawralty* v. *Warren, supra.* Nothing appears in this case to justify the suspicion even, that the refusal was fraudulent. I think it is apparent it was prompted by the highest considerations of prudence. Her husband was the victim of an appetite almost certain to bring him to ruin and premature death. Whether the farm was worth more than the mortgage debt of $26,000, or not, the debt was sufficient, when viewed in connection with the husband's habits, to make it certain any interest she would

acquire by the conveyance of the farm to him, would be speedily swept away. Besides, the complainant cannot say the refusal of the wife is an unexpected difficulty. He was warned there was risk to be incurred. His haste to tie the hands of the defendant before he had an opportunity to consult his wife, will not, in a court of conscience, leave him entirely free from the hazards of such a transaction.

Independent of the considerations already mentioned, I am not satisfied the complainant has a right to the relief he seeks. I have a strong conviction the defendant's agent, Harris, induced him to sign the contract, or to make the bargain, by a representation it would not bind him unless his wife assented. Upon no other theory can the letters of the defendant to the complainant, of June 27th and July 7th, be explained. They evince a total unconsciousness that the contract possessed any force or virtue, and seem to have been written under the belief the complainant understood it was entirely optional with him whether it should be observed or not. If the complainant knew the defendant's signature to the contract was procured by the perfidy of his own agent, and he did nothing to protect him against the deceit, he should be denied the relief he asks.

For the reasons stated, I think the complainant should be left to his remedy at law, and his bill should be dismissed ; but, inasmuch as one of the principal defences set up in the answer, viz. : that the complainant first made the defendant drunk, and then inveigled him into making this contract, is without the slightest support in the proofs, the dismissal must be without costs. If the wife had answered separately, she would have been entitled to costs.

I will advise a dismissal on the terms stated.