This is a bill for specific performance with abatement.
Complainant entered into a contract with the defendant to purchase two tracts of land and lease a third for five years. Complainant is willing to carry out the whole contract, provided he can get a good title to both the tracts, but he claims that the defendant cannot give good title to the second tract, and, therefore, he asks for specific performance only as to the first tract and abatement as to the rest.
Harry Stein, a real estate broker, first conceived the idea of the purchase of the property from the trustees (the defendant's husband having been a co-trustee up to the time of his death, which took place after the contract was entered into between the parties), and he spoke to Mrs. Hadley about the matter, and she said she would sell the whole subject-matter of the contract for $125,000. Afterwards, she informed Stein that she could only give a lease on the third tract, and would deduct $10,000 from the purchase price, but that the party purchasing would have to take a lease for five years at $600 per annum, with an option to purchase at the end of five years. Stein had found a prospective purchaser in the complainant, who agreed to the terms specified by Mrs. Hadley, namely, that $10,000 should be paid down and the balance remain on mortgage. Complainant insisted that the mortgage should be divided between the *Page 469 
first and second tracts, so that $50,000 would remain on tract 1 and $55,000 on tract 2. Mrs. Hadley agreed to that, but the defendant claims that she did not understand for a moment that the purchase-money mortgages of $50,000 on tract 1 and $55,000 on tract 2 represented the true values of the tracts, but she was willing to accommodate the complainant, as he professed that he was going to improve both tracts, and as he was a man of excellent standing in the community, financially and in every way, she thought it would be all right to do as he wished in that regard. The trustee insists that tract 1 is much more valuable than tract 2.
Mrs. Hadley and her husband, Dr. Hadley, were made trustees under the terms of her father's will, and the significant part of that will sub judice is as follows:
Paragraph 10 of the will of Henry P. Simmons, the father of Mrs. Hadley provides —
"I give, devise and bequeath to my trustees hereinafter named all the rest, residue, remainder and remainders of my estate, real, personal and mixed, wheresoever the same may be, and of whatsoever the same may consist, to have and to hold the same, to them and to the survivors and survivor of them, and to his or her successor or successors, and I do hereby authorize and empower them to sell and dispose of my said estate, at such times and in such manner and upon such terms as they shall deem proper, c."
Subdivision 2 of the tenth paragraph provides that the house in which the testator resided, with the barn and out-buildings —
"shall not be sold but shall be held by my said trustees until one of my three children, to wit, Jane Elizabeth Gillen, Henrietta Simmons and Mary Eliza Hadley, shall survive, and thereupon the said premises shall be conveyed in fee-simple to that one of my said three children who shall have survived the other two. * * * I also desire that the unimproved lots lying next south of Henry street shall likewise be held by my said trustees until but one of my said three children shall survive, and thereupon said premises shall be conveyed to such surviving child."
It seems clear to my mind that the intention of the settlor was to devise the unimproved lots lying next south of Henry street to the survivor of his three children. I am satisfied *Page 470 
from the context that his intention was clear, and he simply meant it to read as though the words "I" and "desire" were not present; at any rate, his intention is so clear that I shall find that it was binding on the trustees, and that being so, the trustees could not, without a breach of trust, convey tract No. 2, or give an option on lot 13.
The defendant does not ask for specific performance, and is quite willing to cancel the contract and return the $2,500 which Mr. Hughes, the complainant, has already paid. Of course, under my finding, I should unhesitatingly have refused specific performance of any part of the contract if the trustee had been the complainant. The rule is somewhat different in regard to whether the vendor brings a suit for specific performance, or whether the vendee brings the suit. It often happens that the vendor is unable to convey exactly what he contracted to convey; that the land is deficient in amount, or in quality, or is subject to an easement, or that the vendor has not a full estate in fee-simple, c. If, after making allowance for the defect, the vendee will get substantially what he contracted for, the court will compel the vendee to take the land, with a deduction from the purchase price. If, however, the defect concerns an important or essential matter, e.g., if title to the part of a farm on which the farm building stood was defective, specific performance would not be granted to the vendor. But, where the vendee, as in this case, is suing for specific performance, the rule is different. If he entered into the contract in ignorance of the defect, he may compel conveyance of whatever the vendor has, with a proportionate abatement from the price, even though the defect is very considerable, though the vendor owns but half the land, or owns a life estate merely instead of a fee-simple. If, however, the vendee knew of the defect when he made the contract — if he entered into the contract with his eyes open — he has no claim to an abatement from the price, though he may, of course, if he sees fit to accept the land with its defects, and pay the full price, compel a conveyance of whatever the vendor is able to convey. *Page 471 
The defendant contends that the testimony established the fact that the defendant had notice that there was some doubt as to the trustees' power under the will to sell tract No. 2.
The testimony shows that the complainant knew he was dealing with trustees under a will, and he knew that a question had been raised about their right to sell some portions of the property. Mr. Corbin, the defendant's counsel, informed him in regard to this before complainant signed the contract. Complainant had drawn up the contract and had inserted in it that he was to have a good merchantable title; Mr. Corbin thereupon informed him that all they could give him was a trustees' deed. The complainant then signed the contract, saying, "I want to assure you I won't sign that mortgage until I know I am getting a good title." Complainant then went to see his counsel, who advised him that the trustees had no power to convey tract No. 2, and he thereupon refused to carry out the contract except as to tract No. 1, and he has filed this suit for specific performance as to tract No. 1, with abatement as to tract No. 2.
The main question, therefore, is as to whether, from the information he had before he entered into the contract, he was put on inquiry, that is, whether he had notice.
The question, what gives to B notice of A's right, means, what acts or circumstances are equivalent in their legal effect to an actual knowledge by B of A's right.
The test is, what would an honest man, of ordinary common sense, do, on the strength of the information received? His knowledge of a custom among business men may often necessitate an inquiry.
One of the commonest species is that arising from possession of the land by a third person.
Notice by lis pendens is another very important species of notice, as is also, notice by reference in the chain of title; also notice by recording.
Often, the circumstances are such that they are said to put the person suing for specific performance upon inquiry, as in the instant case. *Page 472 
If the complainant was put on inquiry, if it is shown that he has made as thorough an investigation as could be reasonably expected, he has rebutted the inference of presumption of notice.
I am satisfied, after reviewing the testimony, that the complainant was put on inquiry, and that he should have made an investigation, which he did not.
I find therefore that he is not entitled to specific performance with abatement.
He may have a decree for specific performance without abatement if he so desires, otherwise, I will advise a decree dismissing the bill, and the $2,500 which the complainant had paid must be returned to him.
The other beneficiaries have not been made parties, nor have they filed a bill to enjoin the trustees.
There will be no costs allowed to either side, and no counsel fees, as I think both parties were partly at fault.