WARD T. GULVIN, complainant-respondent,

*v.*

SUNSHINE PARK, INC., defendant-appellant.

[Argued May 22d, 1945. Decided September 27th, 1945.]

*Mr. Leon Leonard (Mr. Hervey S. Moore* and *Mr. John A. Hartpence,* of counsel), for the appellant.

*Mr. Elwood T. Weeks,* for the respondent.

The opinion of the court was delivered by

PERSKIE, J.

This is a specific performance case. The final decree (October 31st, 1944) in favor of complainant, and the order (December 10th, 1944) denying defendant's application to open the decree and grant a re-hearing of the cause were

entered upon the advice of Vice-Chancellor Sooy. The decree and order have for their respective source the suit in Chancery by complainant against the defendant in which complainant sought to compel defendant specifically to perform the written contract between them for the sale and purchase of the lots described in said contract, and to restrain defendant from prosecuting its pending Supreme Court action in ejectment against him.

Appellant, Sunshine Park, Inc., a corporation of this state, defendant below, a subsidiary of the national body—American Sun Bathers Association, originally incorporated under the name of International Nudist Conference—owns, operates and develops a sizeable tract of land, divided into lots, as a nudist colony, called Sunshine Park, and located near Mays Landing, Hamilton Township, Atlantic County, New Jersey. Defendant sells its lots to members of the American Sun Bathers Association.

On June 19th, 1936, defendant entered into a written contract with complainant, Ward T. Gulvin, for the sale of three of its lots. The following is a copy of their agreement:

### "CONTRACT OF MEMBERSHIP

New York City, June 19, 1936. Sunshine Park, Inc., agrees to sell to Ward T. Gulvin, address 1016 West Madison St. Chicago, Ill. and has received from the purchaser as a first payment on such sale the sum of $5.00. And the said purchaser has bought of Sunshine Park, Inc. for the sum of $208.50 lots Nos. 1, 2, 3, Block 11, as shown on the Map of Sunshine Park, Inc., Hamilton Township, N. J., and filed in the office of County Clerk at May's Landing, N. J.

Terms.

Balance of $203.50 to be paid upon signing and delivering of agreement of sale. The balance to be paid in monthly installments of $8. beginning on the 19th day of July, 1936.

(Written over the face) 'For I. N. C. Members Only.'

Subject to the corporation's approval.

This sale is made upon regular terms and conditions established by owner of said property and contingent upon the purchaser's membership in the American Sunshine Association (or the I. N. C.) and is to be covered by the owner's regular form of agreement, which is to be executed by both parties. In case the purchaser does not sign this agreement when presented or within five days from the date thereof, then at option of the seller, this contract may be cancelled and all moneys on same may be retained by the seller as liquidated damages and the seller shall not be liable to the purchaser for any part of

same. In case this sale is rejected by owner, all moneys are to be returned to the purchaser within seven days after said rejection. Upon full payment property will be conveyed by full warranty deed.

Russell B. Abbott

Witness

Sunshine Park, Inc.
By Lawrence Germain.
Ward T. Gulvin, Purchaser."

Admittedly, no other agreement was signed by the parties for the sale of the lots or contract of membership. Complainant satisfied the provisions of the above-quoted agreement which made the sale "contingent upon the purchaser's (complainant's) membership in the American Sunshine Association (or the I. N. C.)." Notwithstanding all prior suggestions to the contrary, it was finally admitted for defendant that complainant was a "member" from "the time he was accepted on the signing of (the) contract until * * * he was expelled * * *," (or more accurately, his "membership" was "lapsed"), on June 3d, 1941, for the non-payment of dues. No charges were made against complainant. He was not accorded a hearing.

Admittedly, complainant was never called upon to execute any agreement with defendant relating to the provisions of the contract that "the sale was upon regular terms and conditions established by the owner of the property * * *." As a matter of fact the rules and regulations which it was suggested had been violated by complainant were not in existence at the time of the signing of the contract. They were not adopted by defendant until August 12th, 1936, and were not thereafter brought to the attention of the complainant until June 3d, 1941, after he was expelled.

Admittedly, complainant paid all of the purchase price, although irregularly but nonetheless accepted, save $20.65 which he tendered on several occasions prior to the filing of suit but which defendant refused to accept because, in substance, he was no longer a member and because his continued membership was a condition precedent to his right to a "full warranty deed" for the lots.

The proofs further disclose that following the execution of the contract of sale, complainant built about four cabins on the lots at a cost of $1,200 exclusive of the value of his labor

in constructing the same. He fixed a total value of $3,500 on the lands and improvements.

It was in this posture of the proofs that Vice-Chancellor Sooy advised the final decree (October 31st, 1944) which was entered and which, among other things, granted the stated relief prayed for by complainant and specifically ordered that defendant, within thirty days after the payment of the $20.65 owed to it, or the tender thereof, execute and deliver to complainant a good and sufficient deed for the lots in question.

We think that the final decree is proper. It is rudimentary law that the remedy by specific performance is not a matter of strict right, but rather of sound judicial discretion. The remedy is granted or denied as the justice and right of the particular case shall seem to the court to require upon the full consideration of the rights and equities of the respective parties, subject to the limitations hereinafter mentioned. *Cf. Smith* v. *McVeigh, 11 N. J. Eq. 239, 240, 241; Gariss* v. *Gariss, 16 N. J. Eq. 79; Ten Eyck* v. *Manning, 52 N. J. Eq. 47, 49; 27 Atl. Rep. 900.* "Mutuality" is the *sine qua non* to a decree for specific performance. The test of "mutuality" is whether the "remedy" as well as the "obligation" is "mutual." Thus "if the enforcement of the obligation may not be granted to both contracting parties, it should not be enforced against one party." *Cf. Fiedler, Inc.,* v. *Coast Finance Co., 129 N. J. Eq. 161,* and cases collated on *p. 168; 18 Atl. Rep. (2d) 268; 135 A. L. R. 273.* He who seeks specific performance of a contract for the conveyance of land must show himself "ready, desirous, prompt and eager to perform the contract on his part." *Meidling* v. *Trefz, 48 N. J. Eq. 638, 644; 23 Atl. Rep. 824.* This showing must of course relate to the contract made by the parties as the Court of Chancery cannot make a contract for them. *Cf. Kuskin* v. *Guttman, 98 N. J. Eq. 617; 130 Atl. Rep. 829; affirmed, 99 N. J. Eq. 887; 132 Atl. Rep. 932; Acquackanonk Building, &c., Passaic v. Parsonnet, 107 N. J. Eq. 48, 50; 151 Atl. Rep. 865.* Tersely stated, complainant was obliged "clearly and conclusively to establish" his right to specific performance of his contract with defendant. *Kelleher* v.

*Bragg, 96 N. J. Eq. 25, 28; 121 Atl. Rep. 530; affirmed, 97 N. J. Eq. 547; 128 Atl. Rep. 921.*

The proofs clearly and conclusively satisfy the aforestated principles. Neither the character nor reputation of complainant or that of his wife was properly in issue. It was not error to exclude testimony along these lines. For as we have seen complainant was expelled or his membership was lapsed on the sole ground of "non-payment of dues." But notwithstanding the stated reason for his expulsion, it was admitted that complainant was a member at the time he was expelled or his membership was lapsed. Nor was it open, in the circumstances, to defendant to complain that no further agreement was executed by it and complainant embracing the terms and conditions established by it. It will be observed that this agreement was to be *"covered by the owner's regular form of an agreement,"* and was to be signed by the purchaser (complainant) "when presented or five days from date thereof." The language requires no construction. It is simple and clear. The seller (defendant) if it chose to have such an agreement was the only one who could submit its "regular form of an agreement" and it was the one who was obliged to "present" that agreement to complainant. It did neither. It necessarily follows that defendant abandoned its known right to such an agreement. Its conduct so indicates. It accepted payments from complainant. It stood by while complainant was building cabins on the lots. Defendant, in fact, permitted complainant to use its trees for lumber without charge. It may not in fairness and justice, in all the facts and circumstances exhibited, be heard to complain about complainant's morals or behavior or that of his wife.

The learned Vice-Chancellor was properly concerned only with the written contract before him and no other. That contract does not lack mutuality. It was subject to enforcement by both parties. Promptly following the hearing, the Vice-Chancellor made his views known to counsel in open court. His views were favorable to complainant. He, however, gave counsel for defendant the opportunity to file a brief in support of his contentions to the contrary. Counsel did not avail himself of the offer.

The order (December 16th, 1944) denying defendant's application to open the final decree and to grant a re-hearing was also properly made. The application was made by counsel other than the one who tried the case for defendant before the Vice-Chancellor. It was based in part on matters which had been urged before the Vice-Chancellor and upon matters (seeking a reformation of the agreement) which were not before the Vice-Chancellor. No meritorious reason was shown. The reasons set down rise no higher than a desire on the part of the defendant to try the case over again and perhaps on a different theory than the one which the case was originally tried. Defendant was not entitled to a re-hearing. *Richardson* v. *Hatch, 68 N. J. Eq. 788; 64 Atl. Rep. 1134.* Moreover, an application for a re-hearing in Chancery is governed by the principles applicable to a motion for a new trial after verdict at law. *Cf. Kirschbaum* v. *Kirschbaum, 92 N. J. Eq. 7, 10; 111 Atl. Rep. 697.* Upon those principles it is not even suggested, indeed it could not properly have been so suggested, that the denial of the application was a "shock to reason and to justice," and hence constituted an abuse of judicial discretion. *Cf. Nelson* v. *Eastern Air Lines, Inc., 128 N. J. Law 46, 58; 24 Atl. Rep. (2d) 371; Chiesa* v. *Public Service Co-ordinated Transport, 128 N. J. Law 69, 72; 24 Atl. Rep. (2d) 369.* Here there was no abuse of judicial discretion. On the contrary, the order is clearly right and just.

The decree in case No. 209 and the order in case No. 210 are both affirmed, with costs.

*For affirmance*—THE CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, COLIE, WELLS, RAFFERTY, DILL, FREUND, JJ. 12.

*For reversal*—None.