[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 187 
The bill was filed by the vendee for specific performance of a contract for the sale of land. The vendor answered, admitting all the allegations of the bill and counterclaimed for cancellation on the ground of mistake. The Chancery Division entered judgment for defendant pursuant to the prayer of the counterclaim, and the plaintiff appeals.
The premises which are the subject of the litigation are a large vacant plot in Belleville, bounded on the north by the Greenwood Lake Branch of the Erie Railroad, on the east by land belonging to the National Grain Yeast Co., and on the south by the Glasby Manufacturing Company. The premises do not abut any highway but a right-of-way running from the southeast corner of the property across the Glasby lot, gives access to Montgomery Street. The Yeast Company's land is a 32-foot strip that extends southerly from the Greenwood Lake Branch, along the east line of the tract in question and along the right-of-way over the Glasby lot, to somewhere beyond Montgomery Street. Through the centre of this strip runs a railroad track or siding, giving the Yeast Company rail connection.
The contract in suit contains this clause: "It is also understood that the property has a right of siding from the tracks of the Greenwood Lake Railroad adjoining the said right-of-way over the Glasby Mfg. Co." Both parties construe this clause as a covenant to convey, appurtenant to the land, a *Page 188 
certain right. Plaintiff says it is a right to load and unload freight cars on that part of the Yeast Company's siding adjoining Glasby, and to use the siding (in common with the Yeast Company) as a connection with the Erie; while defendant says it is only a right to build and use a new siding along the 32-foot strip, parallel with the existing siding. The parties agree that defendant has no right or title at all to the siding, or to the 32-foot ribbon of land on which it is located. The complainant asks abatement of the purchase price for the defendant's inability to convey an interest in the existing siding. Defendant alleges that she thought she owned the westerly half of the 32-foot strip and could convey a right to construct a siding thereon, and this is the mistake on account of which she sought and obtained cancellation. Plaintiff admits that the defendant, Miss Rubino, mistakenly believed that her title ran to the centre line of the 32-foot strip, but denies that her mistake occurred despite the exercise of ordinary care. The proofs fully support this position of plaintiff.
The deed from the town described the lot conveyed as the premises "known as lot 12, block 590, on the Tax Assessment Map," etc. It is the theory of counsel for defendant that this map shows lot 12 to be bounded on the east by the centre line of the 32-foot strip and that defendant saw the map and assumed that it correctly showed her easterly line. Actually, the map indicates the Yeast Company land by three parallel lines, the centre line and the two outside lines. Inspection of it would leave any reasonably cautious person in doubt which line was the easterly boundary of lot 12 and would lead him to make inquiry of the person using the railroad track and a search of the title records. It does not appear that defendant, or any agent of hers, took these elementary precautions. Neither defendant's own testimony nor that of her witnesses shows that she used any care.
We have been referred to no case in which a vendor has obtained cancellation of his contract on the ground that he was led to enter into the contract by his mistaken belief that he owned all the land and estate mentioned in the contract. But assuming there may be cases of that nature in which the *Page 189 
special circumstances require that cancellation should be granted, the instant case is not one of them. Equity will not relieve from the consequences of a unilateral mistake arising from a failure to exercise reasonable care. Dillett v. Kemble,25 N.J. Eq. 66 (Runyon, C., 1874). The counterclaim should have been dismissed.
We turn to plaintiff's case on the bill of complaint. Specific performance was denied for the reason — in addition to the mistake — that an abatement of the purchase price would cause great hardship to the defendant and be unconscionable. But when the court announced this view of an abatement, plaintiff offered to pay the full purchase price for the land, reserving its right of appeal on the question of abatement. We are satisfied that plaintiff was at least entitled to specific performance on those terms.
Abatement depends on the phrase in the contract, "a right of siding," the interpretation of which is disputed. The expression is not common, or its meaning obvious. But the parties must have intended that in addition to the land within the bounds of Lot No. 12, there was other land, or else the existing siding, over which some right would be granted. Defendant's contention that the "right of siding" was only a right to construct a siding on Lot No. 12 itself, cannot be accepted, for without mention of a siding the buyer could lay railroad tracks anywhere on the lot. We are convinced that plaintiff's interpretation of the term is correct. In order to have specific performance, the contract must be reasonably certain. But the court may look into the surrounding circumstances as an aid in ascertaining the meaning of the terms employed. Jersey City v. Jersey City Water SupplyCo., 93 N.J. Eq. 620 (E. A. 1922). If the meaning can thus be made reasonably definite, specific performance will not be denied on the ground of uncertainty. McKinney v. Muir,136 N.J. Eq. 486; affirmed 137 N.J. Eq. 583 (1946).
The scanty facts before us do not indicate that an abatement of the price would cause hardship to defendant. The deed from the town to defendant was dated December 20, 1946. She paid the town $2,000 for the land. Seventeen days later *Page 190 
she agreed to sell to plaintiff for $7,500. The plaintiff sought an abatement of $3,350 to $4,400, leaving defendant a profit of 50 to 100 percent on her investment. The proofs do not show the value Lot No. 12 has without the appurtenant right to use the siding, or how much such a right would add to the land value, or any other data which could be the basis for determining the amount of an abatement of the purchase price. The cause will have to be returned to the Chancery Division to take further proofs and to render such judgment as may appear to be equitable and may not be inconsistent with the views above expressed. To that end, the decree is reversed.