JOHN J. STEHR, PLAINTIFF-RESPONDENT, v. ALTON L. SAWYER AND HELEN SAWYER, DEFENDANTS-APPELLANTS.

Argued May 21, 1963—Decided July 1, 1963.

354

Mr. John R. Knox argued the cause for defendants-appellants (Messrs. Morris, Downing & Sherred, attorneys).

Mr. Francis E. Bright argued the cause for plaintiff-respondent (Messrs. Dolan and Dolan, attorneys).

The opinion of the court was delivered by

FRANCIS, J. On November 20, 1959 plaintiff Stehr and defendants Alton L. and Helen Sawyer, husband and wife, executed a contract for the purchase by the former and sale by the latter of three tracts of land in the Township of Byram, Sussex County, New Jersey. The price agreed upon was $18,000. During the ensuing months considerable correspondence took place between the parties about the sufficiency of defendants' title to the third tract. On March 29, 1960 defendants' attorney wrote plaintiff's attorney admitting the title to that tract was unmarketable and suggesting that the Sawyers would return the down payment, interest and reasonable search fees. Nothing came of this proposal and on May 3, 1960 defendants notified plaintiff's attorney in writing that the closing would take place and the deed would be tendered at his office on May 21, 1960 at 10:00 A. M. The letter made time of the essence and recited also that if plaintiff rejected the deed on that day, defendants would return the down payment plus interest and reasonable search fees.

The parties and their attorneys appeared at the time and place fixed. Defendants tendered a deed for the three tracts as described in the contract. Plaintiff refused the deed on the ground that defendants' title to the third tract was unmarketable. Defendants conceded that to be the fact and

presented a check to plaintiff for $2,000 representing his down payment, interest and reasonable expenses. The offer was refused. Plaintiff then offered to accept the deed with an abatement of $7,000 in the purchase price. Defendants' attorney suggested an abatement of $500. An impasse resulted.

About a month later, defendants found another purchaser who agreed to pay a sum in excess of $18,000 for the same three tracts, although he was aware of the title problem and the preexisting Stehr contract.

Shortly thereafter, plaintiff instituted this action in which he sought a judgment compelling specific performance, with abatement, of defendants' contract with him. In the pretrial order plaintiff claimed "specific performance as to two of the tracts of land and an abatement of the purchase price to the one to which defendants do not have good title." He asserted also that he would accept a deed to all three tracts and pay the full purchase price if defendants could furnish proper title to the third tract. In addition, he sought damages for the expenses suffered in studying defendants' title to the latter tract. In paragraph 7 of the order where the issues to be determined at trial are required to be stated, the following appears:

"(d) Whether plaintiffs are [sic] entitled to specific performance with abatement of part of the purchase price." (See Form 29, par. 7).

At no time, by pleading or amendment to pretrial order, or before all the testimony had been taken at the trial, did plaintiff offer to take, or in any way indicate a willingness to take, title without abatement in the purchase price.

At the close of the trial, summations on the facts and the law were made. Defendants' argument was made first and concerned itself with the contentions that under the facts and circumstances proved, equity should deny relief altogether, and that in any event the relief sought by plaintiff, i. e., specific performance with abatement, should be denied. In

the course of his summation, plaintiff said for the first time that "he is entitled to the remedy of specific performance either with or without abatement."

The trial court, in an oral opinion, declined to grant specific performance with or without abatement. He found that plaintiff knew the title to the third tract was unmarketable. He found further that with such knowledge, and apparently with a willingness to take his chances, plaintiff had the contract prepared, took it to Virginia where the Sawyers then resided and where, after a conference, it was signed. The judge concluded that the Sawyers, whose truthfulness impressed him, had reservations at the time about the sufficiency of the third tract title, and that Stehr was aware of those reservations. Finally, and of considerable significance in the case, he found that plaintiff did not rely on any representations of title by the Sawyers in drawing and promoting the execution of the contract of sale.

Among other things, the trial court said:

"Now, * * * all specific performance, * * * is an equitable matter, and the relief must be awarded, rather, or allowed on equitable principles. Now, under this state of facts that I have recited can this Court in good conscience say to the plaintiff—'you knew the title of the third tract was bad, your lawyer indicated it to you, he told you what to say to the man down in Falls Church,' * * * and then have him profit by that?"

At the conclusion of the oral deliverance, specific performance was denied, and defendants were directed to return plaintiff's $1,800 deposit with 3% interest, without further costs.

Prior to entry of judgment, plaintiff made a formal motion to amend the complaint and pretrial order to include as an issue, *nunc pro tunc*, a claim for specific performance without abatement. The motion was denied and final judgment entered in accordance with the oral opinion.

On appeal, the Appellate Division agreed that the trial court had properly denied specific performance with abatement. *Stehr v. Sawyer*, 73 *N. J. Super.* 394 (*App. Div.* 1962). But it declared that defendants "were in no way

prejudiced by plaintiff's failure to pinpoint the precise issue of specific performance without abatement in the pleadings." And so it held that, although a purchaser who enters into a contract to buy realty knowing of a title defect cannot claim an abatement in the price, he may, if he sees fit, accept the land with its defects, pay the full price, and compel conveyance of whatever the vendor is able to convey. *73 N. J. Super.,* at *pp.* 406–407. Accordingly, the judgment was reversed and the matter remanded for the entry of an order compelling defendants to convey to plaintiff without abatement. We granted defendants' petition for certification. 38 *N. J.* 338 (1962).

 We cannot agree that any form of specific performance should be directed. Such remedy is a discretionary one, resting in equitable principles. This means, among other things, that the party asking the aid of the court must stand in conscientious relation to his adversary; his conduct in the matter must have been fair, just and equitable, not sharp or aiming at unfair advantage. The relief itself must not be harsh or oppressive. In short, it must be very plain that his claim is an equitable one. *Pomeroy, Equity Jurisprudence (5th ed.* 1941), § 400, *pp.* 100–101.

██ Evaluation of equities in these cases must be left largely to the judgment and good conscience of the trial court. He sees and hears the witnesses; appellate tribunals look at words in a record. The difference is frequently the decisive factor in matters of equity.

Obviously, the trial judge felt that plaintiff was somewhat sharp in his pursuit of the purchase contract. Awareness of probable unmarketability did not interfere with his marked eagerness to have the contract prepared by his own attorney and to seek out the Sawyers in Virginia to secure their signatures on it. He knew from earlier conversation with Sawyer that another prospective buyer had been interested in the property and it seems obvious that he hastened to Virginia from northern New Jersey to obtain a binding contract beneficial to himself, regardless of title problems. The contract

called for a warranty deed. It also specifically provided that the title was not derived from any Martin Act proceedings, although the deed to Sawyer showed it was based on a tax sale certificate. According to Stehr, upon preparing the contract, his attorney cautioned him to warn Sawyer about the questionable title before having Mr. and Mrs. Sawyer sign it. Stehr claimed he did so. Sawyer, whose truthfulness was declared to be impressive by the court, denied that any such caution was given. On the contrary, he testified that Stehr assured him these "technicalities" would cause no difficulties or repercussions. He said also that he asked Stehr to give him more time to look into the matter and to consult his own attorney before signing; but Stehr dissuaded him from that course. Furthermore, according to Sawyer, Stehr indicated that the third tract was not important to him; he was interested chiefly in the first and second tracts.

Stehr's subsequent conduct provides substantial support for the inference that his principal objective was to persuade Mr. and Mrs. Sawyer to bind themselves to the contract without delay. It justifies the further inference of awareness on his part that by obtaining their signatures he would be putting himself in an advantageous position for demanding price abatement when the time arrived for title closing. This despite the fact that neither he nor his attorney, nor the Sawyers, had been able to locate the third tract, and so its value could not have played much of a part in the contract price of $18,000 for all three parcels.

Plaintiff could have had a conveyance of whatever interest defendants possessed in the three tracts at any time prior to suit. He could have had a return of his deposit, interest thereon and costs prior to suit. He refused, insisting upon what apparently was an unreasonable price abatement. In this respect, it is noteworthy that at the trial the proof he offered to show value of the phantom third tract was so speculative as to be incapable of supporting any realistic abatement.

But ignoring the equitable weakness of his own position, he persisted in seeking specific performance with abate-

ment in complaint, pretrial order and at trial. Then, when the evidence fully unfolded and the unsympathetic quality of his case was fully disclosed, both as to execution of the contract and lack of proof of damages resulting from the partial deficiency of the land covered by the contract, he shifted his ground and tried to draw to himself at that late date what defendants had offered within a few months after execution of the contract. In the meantime, almost a year and a half had gone by, and defendants had been put to considerable expense for taxes, court costs and attorneys' fees for preparation and defense of the suit. Under all the circumstances and the overall equities in the case, in our opinion, an appellate tribunal would not be justified in overruling the trial court's discretionary and unconditional denial of the helping hand of specific performance.

The judgment of the Appellate Division is reversed and that of the trial court is reinstated.

*For reversal* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.