190 N.J. Super. 181 (1983)
462 A.2d 610
FERDINAND G. WEISBROD AND VALLEY VIEW VILLAGE, A NEW JERSEY PARTNERSHIP, PLAINTIFFS-APPELLANTS,
v.
NATHAN LUTZ AND DORIS LUTZ, HIS WIFE, PAUL SIESSER AND CAROL SIESSER, HIS WIFE, NATHAN LUTZ AND DORIS LUTZ AND PAUL SIESSER AND CAROL SIESSER, TRADING AS LOCKERIDGE REALTY COMPANY, A PARTNERSHIP, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 7, 1983.
Decided June 23, 1983.
*182 Before Judges FRITZ, JOELSON and PETRELLA.
Walter R. Cohn argued the cause for appellants.
Douglas S. Brierley argued the cause for respondents (Schenck, Price, Smith & King, attorneys; Clifford W. Starrett of counsel).
The opinion of the court was delivered by PETRELLA, J.A.D.
Plaintiff appeals from the denial of an order enforcing specific performance against defendants, and alternatively from the quantum of damages awarded by the Chancery Division judge. We affirm.
The trial of this matter took place in two stages. The first hearing determined defendants' liability under the contract of sale. The judge signed an order for specific performance, but as *183 indicated hereinafter, he stated that it would be conditioned upon being worked out with respect to the assumption of the existing bank mortgage by plaintiffs or perhaps the partnership entity which was to take title. However, because of the elapsed time and a period of soaring interest rates, the bank increased the cash amount it wanted on the assumption from $20,000 to $250,000. The judge then refused to allow specific performance in those circumstances.
Defendants had entered into an October 8, 1979 agreement with plaintiffs to sell the Valley View apartment complex in Phillipsburg, New Jersey to plaintiffs for a $975,000 purchase price with a $15,000 deposit. The balance of the purchase price was to be satisfied at the closing by the purchasers paying $110,000 and giving the sellers a $140,000 purchase money mortgage, as well as by the assumption of the $710,000 first mortgage held by Perth Amboy Savings Institution (the "bank"), contingent upon the bank's consent to the assumption. The bank indicated that it would only consent to the assumption if the mortgage rate was raised from 10% to 13% or, alternatively, it received a three point payment of $20,000. After plaintiffs rejected those alternatives, defendants agreed to absorb the $20,000 payment.
The agreement had specified a January 2, 1980 closing date. The closing was initially postponed until at least January 4, 1980 and was scheduled for February 1. The closing did not then occur and defendants sought a February 11 closing date. On February 12, 1980 the attorney for defendants wrote to plaintiffs' attorney declaring plaintiffs in default for failing to close. Plaintiffs' attorney responded by a February 20, 1980 letter rejecting the attempt to declare a default and asserting a time of the essence notice for a March 12, 1980 closing at the office of defendants' New York attorney. By a March 5, 1980 letter defendants' attorney rejected the March 12 closing date, reiterated defendants' position that plaintiffs had defaulted, and deemed the deposit moneys liquidated damages. The parties *184 met to try and resolve the situation on March 31 and attempted a closing but were unsuccessful.
This litigation then ensued. At the trial defendants took the position that they had desired a closing as early as possible because of the high fuel costs. Nevertheless, the Chancery Division judge found that defendants did not actually set a closing date and noted that defendants never made time of the essence. He also concluded that plaintiffs were not precluded from making time of the essence and that plaintiffs could specifically enforce the contract, and that defendants had to offer the $20,000 to the bank to determine if the bank would allow plaintiffs to assume the mortgage. This was, however, in a period of rapidly accelerating interest rates, and the judge in his June 12, 1981 ruling said:
... What you do have is the obligation to attempt in good faith to get the consent and you will also have the obligation to match what you did earlier. That is to say pay $20,000.
Now, if the mortgage lender wants more money than that, and he may, he may, you have a choice. I would suggest, Mr. Cohn [purchasers' attorney], that you take a fast look to see whether you might contribute to the amount over $20,000. That might be the easiest way to handle it but if you run into a difficulty on it I will  I will hear you on a couple of hours' notice by telephone.
In other words, if they won't consent unless more than $20,000 is paid and Dr. Weisbrod [plaintiff] isn't immediately agreeable to paying whatever more they want, I'd suggest that you both come in quickly and we'll see what the situation is and what should be done and we will  so we'll just have to wait and see what happens.
A formal order was entered on June 30, 1981. By notice of motion dated August 10, 1981, plaintiffs sought to compel enforcement of that order. At the motion hearing on August 28, 1981 it was revealed that the bank wanted a 17% interest rate rather than the original 10% to allow plaintiffs to assume the mortgage[*] and plaintiffs' attorney indicated that effectively *185 this was about $250,000 in additional interest over the remaining life of the mortgage.
The equity judge decided, under the circumstances, not to enforce the specific performance judgment. Recognizing that specific performance was a discretionary matter, he said he would not force defendants to pay the "ruinous" premium demanded by the bank. The judge gave plaintiffs the option of trying to arrange their own deal with the bank or obtaining a mortgage from another bank or pursuing a damage remedy. Plaintiffs promptly elected to pursue a damage remedy while reserving their option of working out an agreement with defendants. A September 14, 1981 order was entered which in effect withdrew the prior specific performance judgment of June 30, 1981 and ordered a trial on damages.
At the trial on damages, the president of the mortgagee bank testified that current interest rates were 18% for this type of mortgage loan and that the bank would need $250,000 in order "to continue the loan." The trial judge heard testimony with respect to the value of the property and determined that its value as of March 31, 1980, the date of the "aborted" closing, was $1,000,000. This was $25,000 over the $975,000 purchase price and hence damages of $25,000 were awarded in a "supplementary judgment" dated and filed February 22, 1982, as well as requiring the return of the $15,000 down payment, and reimbursements for the title search and abstract fees of $290.85 and surveying and search fees of $2,334.84.

I
Plaintiffs' attorney argues on this appeal that they are entitled to specific performance, and alternatively that the value of the property should be computed as of a later date than March *186 31, 1980. One such date would be June 30, 1981, the date specific performance had been ordered. Presumably later dates would yield a greater damage figure to plaintiffs. Plaintiffs' attorney argues that the judge made his decision in effect on what he labels as "impossibility of performance." However, we have considered the transcripts of the judge's August 28, 1981 ruling and his determination at the damage trial on February 9, 1982. The only instance where we find that phrase used was in argument by the attorney for plaintiffs. The judge did not so rule, but rather stressed that specific performance was discretionary and that he would not impose a remedy that was ruinous.
On this appeal plaintiffs also contend that subsequent decreases in the prevailing interest rates, coupled with an approximately $28,500 reduction in the present mortgage balance, would make specific performance at a current prevailing rate of about 14% not unreasonable.
It is perfectly clear that specific performance is an equitable remedy which a court awards with discretion. Barry M. Dechtman, Inc. v. Sidpaul Corp., 89 N.J. 547, 551 (1982). In Stehr v. Sawyer, 40 N.J. 352, 357 (1963), the court stated that equitable "relief must not be harsh or excessive." As noted in Brower v. Glen Wild Lake Co., 86 N.J. Super. 341, 350 (App.Div. 1965), certif. den. 44 N.J. 399 (1965):
The equitable relief sought by plaintiffs, if granted, would produce a harsh result. Generally, courts of equity are not wont to enforce contracts where "enforcement * * * will be attended with great hardship or manifest injustice to the defendant." Migel v. Bachofen, 96 N.J. Eq. 608, 611-612 (E. & A. 1924). "Equity will not knowingly become an instrument of injustice." Warner v. Giron, 141 N.J. Eq. 493, 498 (Ch. 1948). A party "asking the aid of the court must stand in conscientious relation to his adversary; his conduct in the matter must have been fair, just and equitable, not sharp or aiming at unfair advantage. The relief itself must not be harsh or oppressive. In short, it must be very plain that his claim is an equitable one." Stehr v. Sawyer, 40 N.J. 352, 357 (1963).
We are satisfied that there was no abuse of discretion by Judge Stanton in his determining to withhold specific performance.

*187 II
Plaintiffs have alternatively attacked the adequacy of the damage award. In their brief on this appeal they had relied upon the Appellate Division decision in Donovan v. Bachstadt, 181 N.J. Super. 367 (App.Div. 1981), for the proposition that differential financing charges ought to be an element of compensatory damages. Although defendants' answering brief referred to the December 9, 1982 decision of the Supreme Court in that case, reported at 91 N.J. 434, plaintiffs failed to refer to that decision in their reply brief where any arguments with respect thereto should have been made. Nonetheless, in a subsequent letter memorandum purportedly under R. 2:6-11(d) plaintiffs attempted to advise the court of the "`new' case" of Donovan v. Bachstadt. While we observe that this case had already been brought to our attention in respondents' brief and was not a proper R. 2:6-11(d) submission, indeed counsel went beyond the contemplation of the Rules in that letter memorandum by essentially rearguing the appeal. We strongly disapprove of that procedure.
In any event, the Supreme Court in Donovan awarded loss of the benefit of the bargain damages when a seller breached an executory contract for the sale of real property. Donovan v. Bachstadt, 91 N.J. 434, 441 (1982). The court said that where a seller was unable to comply with an order for specific performance because of a flaw in the title, "[t]he valuation should be at the time the defendant failed to comply with the judgment of specific performance." Id. at 448. However, we are persuaded that no remand is required under the circumstances of this case for reconsideration in light of Donovan. We need not reach the issue of whether Donovan, decided after the trial court's decision in this case, should be applied retroactively. The situation in Donovan was quite different from what occurred here and the time difference between the May 1 closing and the June 4 specific performance order in Donovan was insubstantial because the aggrieved party promptly sought an order to show cause and the court was able to render an early decision. Here, *188 there was a bona fide dispute and defendant had a claim that there had been a breach of contract by the purchasers and that claim did not appear amenable to a summary judgment or a summary proceeding. There is no showing or finding of bad faith in defendants defending the action. Nor do we view Donovan as establishing an inflexible rule, particularly when the dates involved were so close, and the Donovan court might well have considered the May 1 date of breach and the June 4 date ordered for specific performance in that case as effectively contemporaneous.
Furthermore, the judge's original opinion when determining that defendants remained liable under the contract hardly could be viewed as calling for or setting a fixed date for specific performance in light of the discussion and instructions given by him to the parties regarding the mortgage assumption aspect of the transaction. He recognized that there might well be a serious practical problem regarding the mortgage assumption, and indeed there was. The assumption by purchasers of that mortgage was obviously a large part of the purchase price, especially when a $125,000 cash payment and a $140,000 second mortgage was involved, as well as the originally contemplated $20,000 payment which the sellers had to pay the bank to eliminate the contract contingency. Hence, the judge told the parties to go out and see what would happen with respect to obtaining the bank's approval of the assumption and whether there would be any increased cost of obtaining the bank's consent. Under those circumstances, which are of a nature we believe entitled to respect under Donovan, the parties could hardly have considered the order to be anything other than tentative at that time because the parties knew that the judge intended to review the matter when the bank's position was determined. Accordingly, we find no fault with the application by the Chancery Division judge of equitable principles and the application here of the usual measure of damages as of the date he fixed as the breach of contract.
*189 Plaintiff also relies on Four-G Corp. v. Ruta, 56 N.J. Super. 52, 57 (App.Div. 1959), in arguing that rents and profits ought to have been part of the award. It is sufficient in deciding this appeal to note, as defendants argue, that not only was there no mention of this claim in the pretrial order, but plaintiffs produced no proofs thereof at trial and the matter was not raised in the plaintiffs' motion for rehearing. Because this argument by plaintiffs was not raised below, we will not consider it here. R. 2:10-2. Scherer v. Hyland, 153 N.J. Super. 521, 529 (App.Div. 1976), aff'd 75 N.J. 127 (1977).
The judgment of the Chancery Division is affirmed.
NOTES
[*] We are not called upon to determine whether such demands as a condition to consent to a mortgage assumption might warrant reconsideration of New Jersey's rule, see Century Fed. Sav. & Ln. Ass'n v. Van Glahn, 144 N.J. Super. 48 (Ch.Div. 1976), with respect to a consent to mortgage assumption to an otherwise qualified borrower as either an unconscionable contract, an undue restraint on alienation or a violation of public policy or a violation of any of New Jersey's statutes precluding the charging of points. See N.J.S.A. 46:10B-10 and -11; see also N.J.S.A. 31:1-1 and 2C:21-19. Cf. N.J.S.A. 46:9-9.