966 A.2d 24 (2009)
405 N.J. Super. 538
Doreen HOUSEMAN, Plaintiff-Appellant,
v.
Eric DARE, Defendant-Respondent.
No. A-2415-07T2
Superior Court of New Jersey, Appellate Division.
Submitted December 16, 2008.
Decided March 10, 2009.
*25 Gina A. Calogero, for appellant.
Law Offices of Hoffman DiMuzio, Turnersville, for respondent (James M. Carter, of counsel and on the brief).
Sara J. Corcoran, Secaucus, for amicus curiae Animal Legal Defense Fund.
Isabelle R. Strauss, West Orange, for amicus curiae Lawyers in Defense of Animals.
Before Judges SKILLMAN, GRAVES and GRALL.
The opinion of the court was delivered by
GRALL, J.A.D.
Plaintiff Doreen Houseman appeals from a judgment of the Family Part awarding her $1500 for a dog she and defendant Eric Dare jointly owned when they separated and ended their engagement to be married. Alleging that she and Dare had an oral agreement giving her possession of the dog that Dare breached by wrongfully retaining the dog after a post-separation visit, Houseman sought specific performance of the agreement and a judgment 13 declaring her ownership of the animal.[1] Prior to trial, the court determined that pets are personal property that lack the unique value essential to an award of specific performance. On appeal Houseman claims that the pretrial ruling was erroneous as a matter of law. We agree and remand for further proceedings.[2]
The following facts are not in dispute. Houseman and Dare had a relationship for thirteen years. In 1999 they purchased a residence, which they owned as joint tenants and made their home. In 2000 they engaged to marry, and in 2003 they purchased a pedigree dog for $1500, which they registered with the American Kennel Club reporting that they both owned the dog. In May 2006 Dare decided to end his *26 relationship with Houseman. At that time, Dare wanted to stay in the house and purchase Houseman's interest in the property. In June 2006, Houseman signed a deed transferring her interest in the house to Dare. When she vacated the residence on July 4, 2006, Houseman took the dog and its paraphernalia with her. She left one of the dog's jerseys and some photographs behind as mementos for Dare.
The trial court limited presentation of evidence about the parties' dog in accordance with its pretrial ruling foreclosing Houseman's claim for specific performance and the parties' stipulation that $1500 was the intrinsic value of the dog. Nonetheless, the record includes the following information relevant to Houseman's claim that she and Dare had an oral agreement about the dog that Dare breached after they separated.
According to Houseman, "from the minute [Dare] told [her they] were breaking up, he told [her she] could have" the dog. She and Dare agreed that she would get the dog and one-half the value of the house. Although she admitted that she would not have wanted more than one-half the value of their house if she were not taking the dog, she asserted that her primary concern during her negotiations with Dare was possession of their dog and that she accepted his representations that her share of the equity was $45,000.
Dare acknowledged that Houseman raised the question of who would get the dog after he broke their engagement. Although he did not expressly deny that he agreed to give Houseman the dog, he testified that her agreement to accept $45,000 for the house was not dependent upon her receipt of anything other than the money.
Dare and Houseman did not have a written agreement about the dog, but after Houseman left the residence she allowed him to take the dog for visits after which he returned the pet to her. According to Houseman, when she asked Dare to memorialize their agreement about the dog in a writing, he told her she could trust him and he would not keep the dog from her. Although Dare admitted to making that promise in his answer to Houseman's complaint, he offered no testimony on that point at trial.
In late February 2007, Houseman left the dog with Dare when she went on vacation. On March 4, 2007, she asked Dare for the dog, but the pet was not returned. Houseman filed the complaint that initiated this litigation on March 16, 2007, and when trial commenced in December 2007 Dare still had the dog.
Prior to trial, the parties stipulated that Dare sold the residence in December 2006 and received equity in an amount that exceeded $90,000.
At the conclusion of trial, the court found Houseman's testimony to be "extremely" and "particularly credible." The court noted that Houseman testified "without guile," "was truthful" and answered even the "hard questions ... in a way that would not have been advantageous to her." On those grounds, the court accepted her testimony. In contrast, the court concluded that Dare took unfair advantage of Houseman by giving her only $45,000 for her interest in their residence.
The court made the following findings relevant to the dog:
I'm more than satisfied, hearing Ms. Houseman testify, that the dog was in no way related to the sale of the house. They may have an understanding about the dog. She thought she was getting the dog. He picked the dog up later. He has the dog. We know what the value of the dog is. The dog is worth $1500. I believe it's now in Mr. Dare's possession. He'll pay Ms. Houseman $1500 *27 [the full value stipulated by the parties] for the dog.
The foregoing passage suggests, although not with unmistakable clarity, that the court found that Houseman established an oral agreement under which she was to obtain possession and ownership of the dog. Despite that finding and solely on the ground that Dare had possession of the dog at that time, the court awarded Dare possession and Houseman the dog's stipulated value.
The court's conclusion that specific performance is not, as a matter of law, available to remedy a breach of an oral agreement about possession of a dog reached by its joint owners is not sustainable. The remedy of specific performance can be invoked to address a breach of an enforceable agreement when money damages are not adequate to protect the expectation interest of the injured party and an order requiring performance of the contract will not result in inequity to the offending party, reward the recipient for unfair dealing or conflict with public policy. See Stehr v. Sawyer, 40 N.J. 352, 357, 192 A.2d 569 (1963); Fleischer v. James Drug Stores, 1 N.J. 138, 146, 62 A.2d 383 (1948); Marioni v. 94 Broadway, Inc., 374 N.J.Super. 588, 599, 866 A.2d 208 (App.Div.), certif. denied, 183 N.J. 591, 874 A.2d 1109 (2005); D'Elissa v. D'Amato, 85 N.J. Eq. 466, 467, 97 A. 41 (Ch.1916); Restatement (Second) of Contracts §§ 357, 358, 360, 364, 365 (1981).
Specific performance is generally recognized as the appropriate remedy when an agreement concerns possession of property such as "heirlooms, family treasures and works of art that induce a strong sentimental attachment." Id. at § 360 comment b. That is so because money damages cannot compensate the injured party for the special subjective benefits he or she derives from possession.
On the same reasoning, when personal property has such special subjective value courts have determined that an award of possession of personalty is the only adequate remedy for tortious acquisition and wrongful detention of property. See Burr v. Bloomsburg, 101 N.J. Eq. 615, 621, 138 A. 876 (Ch.1927); see also Restatement (Second) of Torts § 946 (1979). And, consideration of special subjective value is equally appropriate when a court is called upon to exercise its equitable jurisdiction to resolve a dispute between joint owners of property that cannot be partitioned or sold without hardship or violation of public policy. See Newman v. Chase, 70 N.J. 254, 263, 359 A.2d 474 (1976) (recognizing partition as "an ancient head of equity jurisdiction [and] an inherent power of the court"); Swartz v. Becker, 246 N.J.Super. 406, 413, 587 A.2d 1295 (App.Div.1991) (recognizing the relevance of hardship to partition); Michalski v. Michalski, 50 N.J.Super. 454, 467, 142 A.2d 645 (App. Div.1958) (considering acrimonious and litigious nature of parties' relationship in ordering partition rather than enforcing an agreement barring partition); Hotchkin v. Hotchkin, 105 N.J.Super. 475, 480, 253 A.2d 184 (Ch.Div.1969) (addressing partition of personal property); Woodruff v. Woodruff, 44 N.J. Eq. 349, 358, 16 A. 4 (Ch.1888) (considering sentiments asserted in resolving a dispute about a farm that favored leaving undivided possession with the party who had remembrances and associations with the property owned by her father and grandfather).
The special subjective value of personal property worthy of recognition by a court of equity is sentiment explained by facts and circumstancessuch as the party's relationship with the donor or prior associations with the propertythat give rise to the special affection. See Burr, supra, 101 N.J. Eq. at 621-25, 138 A. 876; Pomeroy, *28 Specific Performance of Contracts §§ 12, 34 (3d ed. 1926). In a different context, this court has recognized that pets have special "subjective value" to their owners. Hyland v. Borras, 316 N.J.Super. 22, 25, 719 A.2d 662 (App.Div.1998) (concluding that the owner of an injured dog was entitled to recover costs of treatment that exceeded replacement cost); see also Pitney v. Bugbee, 98 N.J.L. 116, 120, 118 A. 780 (Sup.Ct.1922) (noting the importance of the "companionship" of animals to humans in concluding that a bequest to the Society for Prevention of Cruelty to Animals was exempt from tax as a transfer to a benevolent and charitable organization). Courts of other jurisdictions have considered the special subjective value of pets in resolving questions about possession. See, e.g., Morgan v. Kroupa, 167 Vt. 99, 702 A.2d 630, 633 (1997) (affirming a decision awarding possession of a dog to a person who found the lost pet, "diligently attempted to locate the dog's owner and responsibly sheltered and cared for the animal for over a year").
There is no reason for a court of equity to be more wary in resolving competing claims for possession of a pet based on one party's sincere affection for and attachment to it than in resolving competing claims based on one party's sincere sentiment for an inanimate object based upon a relationship with the donor. See Burr, supra, 101 N.J. Eq. at 626, 138 A. 876. In both types of cases, a court of equity must consider the interests of the parties pressing competing claims for possession and public policies that may be implicated by an award of possession. Cf. Juelfs v. Gough, 41 P.3d 593, 597 (Alaska 2002) (approving modification of a property settlement agreement providing for shared possession of a dog because the arrangement assumed cooperation between the parties that did not exist); Akers v. Sellers, 114 Ind.App. 660, 54 N.E.2d 779, 779-80 (1944) (speculating that the interests of the pet might be different but finding the evidence adequate to support an award of possession to the wife, rather than husband, on the ground that the husband had given her the dog).
In those fortunately rare cases when a separating couple is unable to agree about who will keep jointly held property with special subjective value (either because an agreement is in dispute or there is none) and the trial court deems division by forced sale an inappropriate or inadequate remedy given the nature of the property, our courts are equipped to determine whether the assertion of a special interest in possession is sincere and grounded in "facts and circumstances which endow the chattel with a special ... value" or based upon a sentiment assumed for the purpose of litigation out of greed, ill-will or other sentiment or motive similarly unworthy of protection in a court of equity. Burr, supra, 101 N.J. Eq. at 626, 138 A. 876. We are less confident that there are judicially discoverable and manageable standards for resolving questions of possession from the perspective of a pet, at least apart from cases involving abuse or neglect contrary to public policies expressed in laws designed to protect animals, e.g., N.J.S.A. 4:22-17 to -26. DeVesa v. Dorsey, 134 N.J. 420, 445, 634 A.2d 493 (1993) (discussing justiciablity); see Morgan, supra, 702 A.2d at 633 (noting that "[h]owever strong the emotional attachments between pets and humans, courts simply cannot evaluate the `best interests' of an animal" and resolving a dispute about possession in light of the interests asserted by the parties).
We conclude that the trial court erred by declining to consider the relevance of the oral agreement alleged on the ground that a pet is property. Agreements about property jointly held by cohabitants *29 are material in actions concerning its division. Olson v. Stevens, 322 N.J.Super. 119, 123, 730 A.2d 432 (App. Div. 1999). They may be specifically enforced when that remedy is appropriate.
Houseman's evidence was adequate to require the trial court to consider the oral agreement and the remedy of specific performance. The special subjective value of the dog to Houseman can be inferred from her testimony about its importance to her and her prompt effort to enforce her right of possession when Dare took action adverse to her enjoyment of that right. Her stipulation to the dog's intrinsic monetary value cannot be viewed as a concession that the stipulated value was adequate to compensate her for loss of the special value given her efforts to pursue her claim for specific performance at trial. See Burr, supra, 101 N.J. Eq. at 629, 138 A. 876 (concluding that a payment made on demand to avoid loss of an heirloom did not bar a claim for possession based on an assertion that money damages were inadequate). And, Dare did not establish that an order awarding specific performance would be harsh or oppressive to him, reward Houseman for unfair conduct or violate public policy. See Stehr, supra, 40 N.J. at 357, 192 A.2d 569; Marioni, supra, 374 N.J.Super. at 599, 866 A.2d 208. To the contrary, assuming an oral agreement that Dare breached by keeping the dog after a visit, an order awarding him possession because he had the dog at the time of trial would reward him for his breach.
Recognizing that the trial court is in the best position to evaluate the equities implicated by Houseman's request for possession of the dog, Stehr, supra, 40 N.J. at 357, 192 A.2d 569, and that Dare had no reason to present relevant evidence because he had possession of the dog when the trial court made its improvident pretrial ruling on specific performance, we remand for further proceedings on the existence of an oral agreement about ownership and possession of the dog and the propriety of specific performance.
The trial court's conclusion that the parties' agreement about their dog and residence were independent of one another and the court's findings on the amount due Houseman for her interest in the residence and jointly held savings account are supported by substantial credible evidence in the record. Consequently, we affirm those determinations, R. 2:11-3(e)(1)(A), and reverse and remand to the trial court that part of the judgment awarding Dare possession of the dog and Houseman $1500 for her interest in the pet for further proceedings in conformity with this opinion.
NOTES
[1] Houseman also alleged that Dare converted the dog and claimed that money damages were inadequate to redress the harm she sustained as a consequence of that tort. See Restatement (Second) of Torts § 946 (1979). Because the rights of ownership and possession Houseman seeks to vindicate are based solely on the alleged oral agreement, there is no need to discuss this claim, which, if viable, would be fully addressed by an award of specific performance of the oral agreement.

Houseman raised other claims in her complaint that are not at issue on appeal. She contended that their agreement concerning division of the equity in their jointly-owned home was based on Dare's misrepresentation of the equity, but neither party challenges provisions of the judgment awarding Houseman additional compensation for her interest in the residence, personal property and a joint savings account. Her complaint also included a claim for damages based on intentional infliction of emotional distress. Because that claim was not pursued at trial or on this appeal, we deem it abandoned. Muto v. Kemper Reinsurance Co., 189 N.J.Super. 417, 420-21, 460 A.2d 199 (App.Div.1983).
[2] By leave granted, the Animal Legal Defense Fund and Lawyers in Defense of Animals both filed a brief as amicus curiae. They urge us to adopt a rule that requires consideration of the best interests of the dog.