**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3788-20

NGK INVESTMENTS, LLC,
RUHITA NANKAR, HENDEL
GONZALEZ, SWARAJ NANKAR,
and DIANA GONZALEZ,

       Plaintiffs-Respondents,

v.

JOHN BACZKOWSKI,

       Defendant-Appellant.

_____

Argued April 26, 2023 – Decided November 30, 2023

Before Judges Haas and DeAlmeida.

On appeal from the Superior Court of New Jersey, Chancery Division, Morris County, Docket No. C-000024-21.

Marco Benucci argued the cause for appellant (Wronko, Loewen, Benucci, attorneys; Marco Benucci, of counsel and on the briefs).

Frederick B. Zelley argued the cause for respondents (Law Offices of Frederick B. Zelley, LLC, attorneys; Frederick B. Zelley, of counsel and on the brief).

The opinion of the court was delivered by

DeALMEIDA, J.A.D.

Defendant John Baczkowski appeals from the July 16, 2021 order of the Chancery Division compelling specific performance of a contract for the sale of real property. We affirm.

I.

Baczkowski owns five contiguous parcels in a residential area of Long Hill Township (the property). The parcels are identified in the records of the municipality as Block 11104, Lots 8, 11, 14, 16, and 18.

In November 2020, plaintiff Swaraj Nankar contacted Baczkowski and inquired whether he would be interested in selling the property. In December 2020, Baczkowski advised Swaraj[1] that he would sell the property for $450,000. The parties agreed to meet early in the new year for Swaraj to present an offer in the form of a contract to purchase the property.

On January 9, 2021, Swaraj and plaintiff Hendel Gonzalez met with Baczkowski at a restaurant in Toms River. No attorney was present. Swaraj brought a contract that had been prepared by his counsel. The contract stated

---

[1] Because a number of the plaintiffs share surnames we refer to them by their first names to avoid confusion. No disrespect is intended.

that it was between Baczkowski as seller and five buyers: Swaraj (as to Lot 16), plaintiff Ruhita Nankar (as to Lot 11), Hendel (as to Lot 14), plaintiff Diana Gonzalez (as to Lot 18), and plaintiff NGK Investments, LLC (NGK) (as to Lot 8). The contract lists individual purchase prices for each of the five lots totaling $450,000.

The contract is signed by Baczkowski and Swaraj, whose signature appears under "NKG INVESTMENTS LLC, Buyer" and who is identified on the signature line as "By: Swaraj Nankar, Managing Member." None of the other buyers signed the contract on January 9, 2021, and Swaraj did not sign the contract in his individual capacity. Hendel witnessed Baczkowski's signature, but did not sign the contract as a buyer. Next to Hendel's signature as a witness is the handwritten notation "01/08/2021," which appears to be an error, given that Baczkowski signed the contract on January 9, 2021. Swaraj's signature is not witnessed. Baczkowski retained a copy of the signed contract.

On January 27, 2021, Swaraj signed the contract in his individual capacity, as did Hendel, Ruhita, and Diana. Their individual-capacity signatures appear on a tenth page of what was previously a nine-page contract. There are no witness signatures on this version of the contract other than Hendel's signature as a witness of the seller's signature, which was still incorrectly dated January

3

8, 2021.  The signatures of Hendel and Diana are followed by a handwritten notation "1/27/2021."  The other signatures are not dated.

Swaraj emailed this version of the contract to Baczkowski the following day.  The email states:

> Hi John,
>
> Hope you are well.
>
> It was great to see you in person earlier this month.  Just wanted to let you know what (sic) we are working on the title survey, etc. right now.  In short, everything is on track and if all goes well we will close our transaction by the end of February.
>
> Attached is a scanned copy of the contract we signed the other day.  You already have a hard copy, but I wanted you to have a scanned copy too.
>
> Thanks.
>
> Regards,
> Raj

On February 3, 2021, title binders for all five parcels were issued and transmitted to the buyers' counsel.  In addition, on that date, notices of settlement were filed with the Morris County Clerk for all five parcels.

According to the buyers' counsel, he telephoned Baczkowski on February 4, 2021, to ask if he intended to retain an attorney to prepare the documents necessary to transfer title to the parcels to the buyers.  Baczkowski stated that

he was entertaining an offer from a third-party for the purchase of the property. The attorney responded that the buyers had a binding contract and were prepared to close. Baczkowski abruptly hung up. During a subsequent phone call that day, Baczkowski informed Swaraj that he was considering an offer $25,000 higher than the amount he agreed to accept in the contract.

On February 8, 2021, the buyers' counsel submitted to the Morris County Clerk for recording an original fully-executed contract for the purchase of the property. The signature pages on this version of the contract differ from those on the version Swaraj emailed to Baczkowski on January 28, 2021. Each of the individual-capacity buyers' signatures are witnessed, three by Hendel and one by Diana. Swaraj's signature is followed by the handwritten notation, "01/09/2021." Also, Swaraj's signature on behalf of NGK is witnessed by Hendel and dated with the handwritten notation "01/09/2021." Finally, the date next to Hendel's signature witnessing Baczkowski's signature was changed from "01/08/21" to "01/09/21."

In addition, attached to the contract is an eleventh page with notarized statements dated February 5, 2021: (1) attesting to the signatures of Swaraj, Ruhita, Hendel, and Diana on the contract; (2) attesting to Hendel's statement that he witnessed Baczkowski sign the contract; and (3) attesting to Swaraj's

5

statement that he signed the contract in his capacity as a member of NGK and that he was authorized to do so.[2] On February 17, 2021, the county clerk recorded the contract.

Also on February 8, 2021, the buyers' counsel sent Baczkowski by certified mail a copy of the fully executed and acknowledged version of the contract that had been filed with the county clerk, along with the title binders for the parcels. He notified Baczkowski that the buyers had concluded their due diligence, time was of the essence, and the closing would take place on February 19, 2021, at 10:00 a.m. at his office. He also provided Baczkowski with the name of an attorney he might consider retaining for the closing.

The record contains proof from the postal service that the February 8, 2021 mailing was delivered "to an individual at" Baczkowski's "address at 2:10 pm on February 11, 2021 . . . ."

Seven days later, on February 18, 2021, the day before the scheduled closing, Baczkowski left the following voice message for the buyers' attorney:

---

[2] According to N.J.S.A. 46:14-2.1, when an acknowledged contract is to be filed with a county clerk, a notary need only "acknowledge [that the document] was executed as the maker's own act," and a witness need only acknowledge that they "witnessed the maker of the instrument execute the instrument as the maker's own act." The statute does not require the acknowledgment be made on the same date that the document is signed.

Yes, uh, Mr. Zelley, uh, my name is John Baczkowski and I'm supposed to be meeting up, uh, tomorrow Friday the 19th at 10:00 a.m., but it looks like, uh, the weather is gonna be inclement so, uh uh, I'm not gonna be able to, uh, well right, right at the present, its, uh ten after eleven and, uh, on Thursday and it looks like the weather is going to be bad so I'm gonna need to reschedule, uh, this office visit. Okay? Uh, this is with, um uh, Raj, uh, a closing, and so I will contact him and we will make, uh, a future date. Okay? Thank you. If you need to get in touch with me, my phone number is . . . . Alright? Thank you. Bye.

The voice message confirms that Baczkowski did not believe that he had rescinded the contract, given that he acknowledged he was to attend the closing and stated he would like to reschedule the closing because inclement weather was keeping him from attending on the date and at the time set in counsel's letter.

About six hours later, an attorney informed the buyers' counsel by email that he had been retained by Baczkowski. He stated that Baczkowski received the February 8, 2021 letter "this past Saturday," which would be February 13, 2021. The attorney continued, "[p]lease be advised that according to my calculations the attorney review expires today. Ergo, this email to you. Pursuant to my client's right to have the contract reviewed within a three-day period (business days), my client declares the contract null and void." He further stated,

please note that my client, prior to this Saturday never received a copy of the fully executed contract. The one that you provided to him is different from the copy that

7

my client has had and that contains 9 pages, not the 10 on the contract filed (or 11 including the notary section). The issue of the validity, legality and effectiveness of the contract and – overall – of this transaction shall be discussed further and in due course. At this juncture, we view this transaction as void and/or voidable and as to (sic) having no effect as among the parties.

Baczkowski did not appear for the February 19, 2021 closing. The buyers were ready, willing, and able to execute the contract that day.

The buyers subsequently filed a complaint and order to show cause in the Chancery Division alleging breach of contract and breach of the covenant of good faith and fair dealing. They sought an order requiring specific performance of the contract, along with compensatory and punitive damages, and attorney's fees and costs.

Baczkowski opposed the order to show cause. He filed a certification stating that when they first spoke, Swaraj gave him the impression that he would be the only buyer of the property. According to Baczkowski, at the restaurant meeting, Swaraj identified Hendel as serving only as a witness and failed to identify him as a buyer. Although Baczkowski reviewed the contract "in haste" he noticed that Hendel and the other buyers were identified in the first paragraph of the contract. He stated that this was the first time he realized there was more than one purchaser of the property and that Hendel was one of the purchasers.

8

Baczkowski was, therefore, "surprised" that only Swaraj signed the contract. He also stated that he was not advised before signing the contract by the buyers or their counsel that he should retain an attorney.[3] Baczkowski admitted that he retained one copy of the signed contract.

Baczkowski claimed that he received "no feedback from" the buyers after the January 9, 2021 meeting. According to Baczkowski:

> Notwithstanding the fact that Raj claims that he sent an email to me, I never received it or at the very least I never read it. To be completely candid with the Court I will admit my shortcomings. I am 69 and I am not computer and technology savvy. Moreover, I have problems with eyesight and I rarely check my emails. If and when I receive emails, I typically go to the library to have someone help me and print whatever it is that I receive as I have difficulties reading off a computer screen. Generally, I ask anyone I am dealing with to call me rather than emailing me as that is not my preferred means of communication. In the alternative, I ask the sender of the email to call me and let me know that an email has been forwarded to me so that I can go through the process of going to the library as stated above. Raj was told about the foregoing and he never called me beforehand to alert me about email(s).

---

[3] Baczkowski's assertion is contradicted by paragraph 39 of the contract, which provides that "Seller further acknowledges that Buyer and Buyer's attorney hereby encourage Seller to engage any attorney to represent him in connection with the within transaction and to review the within contract on his behalf prior to his signing the same."

Baczkowski claimed that during the February 4, 2021 telephone conversation, he informed the buyers' counsel that he had never received a fully-executed contract "and since almost a month had gone by, there was no contract and that as such I would not sell to" the buyers. He denied having abruptly ended the call, stating that his cellphone battery died. Baczkowski did not explain why, if he thought the contract was canceled as of February 4, 2021, he left a voice message with the buyers' counsel informing him that inclement weather was keeping him from attending the February 19, 2021 closing and that he would need to reschedule the closing.

On July 16, 2021, the trial court issued an order granting the buyers' request for specific performance, enjoining Baczkowski from conveying the property to any third party, and directing him to execute the contract by selling the property to the buyers.[4] In a written opinion accompanying the order, the court concluded that the buyers produced clear and convincing evidence that they are entitled to specific performance. The court found that Baczkowski admitted that he signed the contract and found that he had sufficient opportunity to retain counsel to review its terms. In addition, the court found that the buyers

---

[4] We note that the order directs Baczkowski to sell the property to NGK. We assume the court intended to direct Baczkowski to sell the property to each of the five buyers identified in the contract pursuant to the terms of the contract.

10

also signed the contract, and that its terms were fair, reasonable, and enforceable and clearly required the sale of the property for $450,000 to the buyers. The court determined that the buyers would suffer irreparable injury in the absence of specific performance, and Baczkowski would not be harmed by that relief, given that his receipt of an offer to purchase the property at a higher price was not a valid reason to rescind the contract.

This appeal follows. Baczkowski argues: (1) he validly withdrew his offer on February 4, 2021, prior to delivery of a fully-executed version of the contract; (2) Swaraj could not bind the other buyers on the theory of agency when he signed the contract on January 9, 2021; and (3) the trial court inappropriately issued relief by resolving disputed issues of material fact without a holding a hearing.

## II.

"We may not overturn the trial court's factfindings unless we conclude that those findings are 'manifestly unsupported' by the 'reasonably credible evidence' in the record." Balducci v. Cige, 240 N.J. 574, 595 (2020) (quoting Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011)). "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp.

Comm., 140 N.J. 366, 378 (1995); see also Marioni v. Roxy Garments Delivery Co., Inc., 417 N.J. Super. 269, 275 (App. Div. 2010) ("the Chancery judge is required to apply accepted legal and equitable principles.").

"[A] judge sitting in a court of equity has a broad range of discretion to fashion the appropriate remedy in order to vindicate a wrong consistent with principles of fairness, justice and the law." Graziano v. Grant, 326 N.J. Super. 328, 342 (App. Div. 1999). Review of a trial court's decision regarding application of an equitable doctrine is "limited" and we "will not substitute our judgment for that of the trial judge in the absence of a clear abuse of discretion." N.Y. Mortg. as Trustee v. Deely, 466 N.J. Super. 387, 397 (App. Div. 2021); see also Sears Mortg. Corp. v. Rose, 134 N.J. 326, 354 (1993) (applying the abuse of discretion standard when reviewing equitable remedies).

"A contract arises from offer and acceptance and must be sufficiently definite 'that the performance to be rendered by each party can be ascertained with reasonable certainty.'" Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992) (quoting Borough of W. Caldwell v. Borough of Caldwell, 26 N.J. 9, 24-25 (1958)). To create an enforceable contract, the "parties [must] agree on essential terms and manifest an intention to be bound by those terms . . . ." Ibid. A fully-executed contract requires all parties to have signed the contract.

Chicago Five Portfolio, LLC v. Dir., Div. of Tax'n, 24 N.J. Tax. 342, 352 (Tax 2008).

In general, a real estate contract is "binding and enforceable when approved, signed and delivered. It cannot be unilaterally terminated." Zapanta v. Isoldi, 212 N.J. Super. 678, 693 (Ch. Div. 1986). "Where the terms of a contract are clear and unambiguous there is no room for interpretation or construction and we must enforce those terms as written." Levison v. Weintraub, 215 N.J. Super. 273, 276 (App. Div. 1987) (citing Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43 (1960)).

Baczkowski argues that he raised a disputed issue of material fact with respect to whether he withdrew his offer to sell the property during the February 4, 2021 telephone call with the buyers' counsel prior to all buyers having executed the contract. He contends that the trial court erred by resolving that factual issue without having held an evidentiary hearing. While the trial court did not make specific findings of fact with respect to Baczkowski's purported withdrawal of his offer, it is clear that it found the parties formed a contract.

The record amply demonstrates that Baczkowski did not withdraw his offer during the February 4, 2021 telephone conversation with the buyers' counsel. We agree with the buyers' argument that Baczkowski never made an

offer to sell the property. It was the buyers who presented an offer to Baczkowski in the form of a written contract to purchase the property for $450,000. Baczkowski, who had ample opportunity to review the buyers' offer, accepted the offer when he signed the contract on January 9, 2021. He had no offer to withdraw on February 4, 2021.

In addition, Baczkowski had no basis to rescind his acceptance of the buyers' offer. Nothing in the contract required that all purchasers sign it by a particular date or to contact Baczkowski until they had completed their due diligence. It is unclear what formed the basis of Baczkowski's claimed belief that the buyers manifested that they lost interest in purchasing the property and abandoned the contract by not contacting him in the weeks after he accepted their offer.

Moreover, Baczkowski's subsequent actions confirm that he did not believe that he had rescinded the contract. A copy of the contract was delivered to him on February 11, 2021, as established by a postal service business record. According to Baczkowski, he had withdrawn his offer seven days earlier. Yet, in his February 18, 2021 voice message to the buyers' counsel, Baczkowski stated that he could not attend the February 19, 2021 closing because of inclement weather and that the closing would have to be rescheduled. With that

14

message, Baczkowski admitted that he did not believe he had rescinded the contract.

Baczkowski's counsel did not attempt to void the contract until February 18, 2021, five business days after it was delivered to Baczkowski, and after the three-day attorney review period. We see ample support in the record for the conclusion that Baczkowski's arguments with respect to the identity of the buyers and the timing of their execution of the contract are nothing more than an attempt to back out of a valid contract because he received a higher offer for the property.[5]

Baczkowski also argues that the trial court erred by ordering specific performance of the contract. "It is perfectly clear that specific performance is an equitable remedy which a court awards with discretion." Weisbrod v. Lutz, 190 N.J. Super. 181, 196 (App. Div. 1983). "[T]he right to specific performance turns not only on whether plaintiff has demonstrated a right to legal relief but also whether the performance of the contract represents an equitable result." Marioni v. 94 Broadway, Inc., 374 N.J. Super. 588, 599 (App. Div. 2005).

---

[5] Baczkowski offered no evidence that he would suffer harm by having five buyers instead of the one buyer he initially thought would purchase the property. Nor does he explain why, if having five buyers would prejudice him, he signed the contract, which clearly identified the five buyers. Thus, the number of buyers is not a basis for a purported rescission of the contract.

A-3788-20

> [W]hen specific performance is sought, the court is required to do more than merely determine whether the contract is valid and enforceable; the court of equity must also "apprise the respective conduct and situation of the parties," the clarity of the agreement itself notwithstanding that it may be legally enforceable, and the impact of an order compelling performance, that is, whether such an order is harsh or oppressive to the defendant, or whether a denial of specific performance leaves plaintiff with an adequate remedy . . . .
>
> [Id. at 600 (citations omitted).]

"[A]s a consequence of the remedy's equitable underpinnings, the party seeking specific performance 'must stand in conscientious relation to his adversary; his conduct in the matter must have been fair, just and equitable, not sharp or aiming at unfair advantage.'" Ibid. (quoting Stehr v. Sawyer, 40 N.J. 352, 357 (1963)).

"This weighing of equitable considerations must represent, in each case, a conscious attempt on the part of the court of equity to render complete justice to both parties regarding their contractual relationship." Ibid. "In short, a court of equity will often direct performance of such a contract because, when there is no excuse for the failure to perform, equity regards and treats as done what, in good conscience, ought to be done." Id. at 600-01.

We have carefully reviewed the record and are convinced that the trial court acted within its discretion when it ordered specific performance of the contract. The record reveals that the buyers made a fair and reasonable offer for

16

the purchase of the property that Baczkowski accepted. The parties executed a contract that the buyers were willing, able, and ready to perform. The court rejected Baczkowski's argument that he canceled the contract prior to its execution and determined that it would be inequitable to the buyers to deprive them of the unique property they fairly contracted to purchase in order to permit Baczkowski to accept a higher offer from other purchasers.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17

A-3788-20